Chief Justice Robertson
delivered the opinion of the Court.
At the August term, ¡811, of the Bar-rqn county court, Benjamin Bowles was appointed administrator, “de bonis non” of the goods and chat-ties of Daniel Jeffries, which remained unadminister-e.d by Patsy Jeffries, who had been the administratrix. *685 Jesse Bowles and William Shirley were the sureties, in B. Bowles’ official bond.
On the 18th ofNovember, 1811, B. Bowles returned, to the county court, an inventory and appraisement of the slaves and chatties, amounting to $2874 25 cents; of which aggregate, the value of the slaves was the principal item, being $2460.
The administrator also returned a sale bill,in April, 1812, (including the hire of the slaves for the year 1812,) amounting in the aggregate to $494 84 cents.
The slaves were distributed by commissioners, appointed in December, 1813, and the report of their partition was received and approved by the county court, in April, 1814.
There were six distributees, of whom, B. Bowles’ wife was one.
In October, 1824, this suit in chancery was brought, in the names of Richard Mitchell and wife, and others, as distributees, against James Jeffries, and B. Bowles and wife, as the remaining distributees, and against B. Bowles, as administrator, and W. Shirley, one of his sureties, and the unknown heirs of the other surety, Jesse Bowles.'
A subpoena was returned, executed on Shirley and James Jeffries, aiid an order of publication, against B. Bowles and wile, and the unknown heirs of J. Bowles, made at the June term, 1825, was certified as having been published, from the 14th of October, to the 9th of Decemoer, 1825; and, thereupon, at the June term, 1826, there being no answer, the bill was taken for confessed, and the court decreed to each of the complaining distributees $ 176, against the administrator, and against Shirley and the unknown heirs of Jesse Bowles.
At the September term, 1826, the administrator filed his answer, and thereby opened the decree.
In this answer, he states, that only $300, in addition to the amount of the sale bill, ever came to his hands; that this sum of $300 included the hire of the slaves, for the year 1813, which was the last year, when he had any control over them, as administrator. The aggregate of $794 84 cents, thus made out and *686 admitted, he attempts to reduce to $607 20 cents,by a claim of compensation for his services, and by payments of $¡140, which he alleges he made to the creditors of his intestate. He then shews, by the report of the commissioners appointed to distribute theslaves, that he was entitled to $¡162 50 cents, and that Mitchell and wife owed $67 50 cents, to equalize the values of the allotments, and claiming credits for the $>162 50 cents, and for board, education, and articles furnished to the complaining distributees, he brings them in his debt; some of them to a pretty- large amount.
irregular, for distributees suing for distribution, to proceed against the unknown heirs of the surety of the administrator, with-outjoining the surety’s personal re-presenfative, or alleging that there is none.
irregular to proceed against unknown heirs, without affidavit, that they are unknown.
On the bill and answer, and the deposition of James Jeffries, (which docs not materially change the aspect of the case,) the circuit court set aside its former decree, and having dismissed the bill, as to Petty and wife, at their request, decreed against the administrator and Shirley, and the unknown heirs of J. Bowles, $¡138 to Fisher and wife, ,$¡118 to Hibbard and wife, and $¡113 to Mitchell and wife.
To reverse this decree, this writ of error is prosecuted with a supersedeas, by Shirley and others.
The first decree was obviously erroneous, and it was right to receive the answer of Bowles, and open that decree. The court might have required, as a prerequisite, the execution of a bond for costs. But as the filing of the answer was not opposed, nor a bond required, this court will not now stop to enquire into the regularity of opening the decree.
The last decree is irregular and erroneous.
1st. It wasirregulartoproceedagainstthe unknown heirs of Jesse Bowles, without associating with them, his personal representatives, or alleging, that there were none. • The liability is personal. The publication and decree are both against the unknown heirs, without including the administrators or executors.
2d. It was irregular to proceed against the unknown heirs, without an affidavit, that they were unknown. There was no such affidavit in this case.
3d. The publication was insufficient. It was not continued two months, and was not made or commenced, until after the term to which it should have been returned. Sucha publication did not operate as constructive service.
Decree a-gaitist unknown heirs of turety of administrator, in favor of the distri-butees, should be, “to be levied of estate descended to them.” Decree against administrator, in favor of distri-butees, should require a refunding bond.
Administrator is not chargeable with hire of slaves after distribution of them by county court at his request. Administrator has no right to slaves after allotment of them to heirs, by county court at his request
4th. The decree is against the unknown heirs in their own right. If should have been rendered, to be levied of the estate descended to them, if it had been right to render any decree against them.
6th. The decree requires no ‘‘refunding bond.” Such a bond should be given.
6th. The amounts decreed, exceed the highest sums, which the record, on any reasonable or aliowa-' hie hypothesis, would authorize.
' What basis, the circuit court assumed for its first decree, this court canuot conjecture; nor will the re cord enable us to ascertain, from what dam, the sums stated in the last decree, wore calculated.
The court had no right to charge the administrator or his sureties, with the hire of the slaves, after the distribution of them, by the county court. If B. Bowles hired them out after that time, he acted as guardian, and not as administrator. After the allotment,' which was made at hig instance, he had no right to the slaves, in his character of administrator. The hire for 1812 and 1813, was included in the aggregate sum of $794 84 cents, which is the maximum with which the administrator can be charged. This sum should be credited by a reasonable allowance to the administrator for his services. And it would be but equitable, (as B. Bowles is entitled from the other distributees to $162 50 cents, allotted to him in the distribution of the slaves, and as Mitchell and wife owe,in the same way, $87 50.) to aliowa credit for this $87 50 cents, to the administrator. It would have been belter to have sought, by the bill, for a final settlement, among all the distributees, of all the estate. But, although this has not been done, it would be no more than reasonable to-credit the administrator with the $87 50, as one of the defendants in error, owes that much to the other distributees; and as B.Bowles is entitled to a larger sum from them. Under these circumstances, the sureties should be relieved to this extent.
The administrator is not chargeable with interest. There is nothing in the record, which would justify a charge of interest.
Denny, for plaintiff; Triplett, for defendant.
If then, tbe administrator be entitled to no credit for the $140, charged by him, for payments made to the creditors of his intestate, (which is far from being clear,) and if, for want of proof, he be entitled to no credit for the boarding and tuition, and advances, charged in his account, still, it is evident, that the decree is for more than can be shewn to be justly due.
Wherefore, the decree of the circuit court is reversed, and the cause remanded, for proceedings consistent with this opinion.